## ROBERT LEE v. WILLIAM WOODWORTH et al.

A mortgage deed contains the following description :—"All that certain tract or lot of land, situate in, &c. on the south-east side of the farm or plantation late the property of J. C. deceased ; bounded on the S. W. by the public road leading from New-Brunswick to South river bridge, and N. W. by lands late Benjamin Tuthill's, deceased, N. E. by other lands of the parties of the

[Lee v. Woodworth et al.]

first part, and on the S. E. also by other lands of the said parties of the first part, containing fifty acres; or the next and nearest adjoining thereto fifty acres of land, of and belonging to the said farm or plantation now in the joint or separate possession of the aforesaid James, Alfred and Edward Crommelin that is unincumbered, provided the first fifty acres herein described is in any way incumbered so as to defeat the title hereby made or intended to be made to the said Robert Lee." The mortgage is not void for uncertainty as to either of the tracts therein referred to.

The whole farm is subject to the mortgage, and may be taken to satisfy it if necessary. A strip of fifty acres on one side is to be resorted to first; if that should be so incumbered as to defeat the title, or prove insufficient to raise the money, then the next adjoining fifty acres is to be resorted to, and so on by separate and adjacent parcels of fifty acres, until one is found not so incumbered as to defeat the title and claim of the mortgagee.

A line drawn parallel to the south-east boundary line of the farm, so as to include fifty acres, will define with accuracy the first lot of fifty acres intended to be mortgaged.

And the mortgage does not fail against the nearest adjoining fifty acres described as *unincumbered*, although the whole property should be incumbered.

A mortgage duly registered is notice to all the world, and if there be ambiguity on the face of it, it is sufficient to put subsequent purchasers upon enquiry.

BILL for foreclosure, filed 16th November, 1829. Woodworth and others, who subsequently purchased the premises, answered, admitting the complainant's mortgage, but insisting that they were bona fide purchasers for value, without notice; and that the mortgage, except as to the first fifty acres described therein, is void for uncertainty. The cause was heard upon the pleadings.

*F. B. Chetwood* and *Williamson*, for complainant.

*G. Wood*, for defendants.

Cases cited by complainant's counsel. *Cowper*, 600, 362; *Douglass*, 382; 7 *Mass.* 384; 1 *Mass.* 227; 3 *D. and E.* 442.

Cases cited by defendants' counsel. 2 *Sch. and Lef.* 648; 1 *Reports*, 87, 88; 2 *John. Chan. R.* 190; 6 *Ibid*, 417.

[Lee v. Woodworth et al.]

THE CHANCELLOR. On the 30th of August, 1826, Alfred Crommelin and Edward Crommelin, together with James Crommelin, now deceased, owning and possessing, as tenants in common, a certain farm or plantation, situate in North-Brunswick, in the county of Middlesex, late the property of James Crommelin, the elder, deceased, gave a mortgage to Robert Lee, to secure the payment of three hundred and seventy-one dollars and eleven cents. The mortgage conveyed and confirmed to the said Robert Lee, "all that certain tract or lot of land, situate in the township of North-Brunswick, county of Middlesex, New-Jersey, on the south-east side of the farm or plantation late the property of James Crommelin, deceased; bounded on the south-west by the public road leading from New-Brunswick to South river bridge, and north-west by lands late Benjamin Tuthill's, deceased, north-east by other lands of the parties of the first part, and on the south-east also by other lands of said parties of the first part, containing fifty acres; or the next and nearest adjoining thereto fifty acres of land, of and belonging to the said farm or plantation now in the joint or separate possesion of the aforesaid James, Alfred and Edward Crommelin that is unincumbered, provided the fifty acres first herein described is in any way incumbered so as to defeat the title hereby made or intended to be made to the said Robert Lee."

James Crommelin was the owner of nine undivided fourteenth parts of the farm, Alfred owned three parts, and Edward the residue. Before the execution of this mortgage, James had incumbered his share to a considerable amount. He died in 1827, and his interest was afterwards sold in 1830, to satisfy the incumbrances. The amount produced by the sale was insufficient to pay all, and no part of it was applied to the satisfaction of the complainant's claim.

After the making of the mortgage, Edward mortgaged his share of the same to Miles C. Smith, and also to the executors of William Paterson, deceased; and afterwards, in 1827, he and Alfred sold all their interest in the property to Thomas E. Davis. This interest has become vested, by divers mean conveyances, in

[Lee v. Woodworth et al.]

William Woodworth, Thomas Loud, John Loud, Philologus Loud, and Joseph E. Loud, who are now in possession, and parties to the suit.

Nine fourteenth parts of the fifty acres specifically pledged or granted in the mortgage as a security for the payment of the debt, having been sold to satisfy prior liens, the complainant seeks to foreclose the equity in the remaining five fourteenth parts and sell it, and if that should prove insufficient, then to sell the mortgagors' interest in the next or nearest adjoining fifty acres, and so to continue until the money shall be made.

Those of the defendants who are owners of the property by purchase, to wit, Woodworth and the Louds, have answered the bill. They admit all the material facts in their answer, but set up two grounds of defence. One is, that they are purchasers for a valuable consideration, without notice; and the other, that except as to the fifty acres specifically designated, the deed is void for uncertainty.

So far as the complainant seeks to foreclose and sell the right of redemption of Edward and Alfred Crommelin in the fifty acres, he is entitled to a decree in the usual form. Whether he has any further rights, depends on the construction now to be given to the instrument.

The deed, so far as relates to the description of the property intended to pass by it, is unskilfully and inartificially drawn. It wants that certainty and precision which constituted the beauty of the old common law conveyances, and gave safety to both purchaser and vendor, and which in modern times has been too much neglected, especially in our own country. The genius of our institutions, and the policy of the laws, tend to remove as far as may be, all impediments to the alienation of real property, and place it upon the same footing with personalty, as nearly as the essential difference in the two species of property will warrant. Hence real estate is mortgaged and sold, and passed from hand to hand, with scarcely any of the solemnities that formerly attended transactions of so grave a character; and the evidences of title are frequently prepared by the parties, or by those who

know less of their nature than they do themselves. Nevertheless, they are not to be rejected for want of form, if by law they may be sustained.

The first and most important rule in the construction of deeds, is, " that the construction be favorable, and as near to the minds and apparent intents of the parties as possible it may be, and law will permit." The reason for this rule is given briefly, but forcibly, by lord Coke; "*propter simplicitatem laicorum;*" and there was never a time when the rule was more needed than the present, or when the reason of it was more apparent. Taking this rule as a guide, I cannot doubt as to the course of duty in this case.

It must be plain to every one, that the mortgagee was not satisfied with the security of fifty acres, and that he did not intend to be limited to that quantity, if it should turn out to be insufficient; and I think it equally plain that the mortgagors intended fully to secure him, and that, in case the fifty acres failed to do it, he should be at liberty to resort to other property to make the money. If the fifty acres, and no more, were to be subject to the lien, no possible reason can be assigned why any thing was said about other fifty acres next adjoining it. It was useless, and worse than useless; the only effect of it being to beget doubt and confusion, where every thing should be clear and certain.

The contingency upon which other than the fifty acres were to be taken and applied to the payment of the debt, is clearly specified :—" Provided the fifty acres first herein described is in any way incumbered so as to defeat the title hereby made or intended to be made to the said Robert Lee." It is not disputed by any that the contingency has happened—that the fifty acres first described, or that part of it which remains unsold, is insufficient to satisfy the mortgage. Then we are in possession of these facts :—

1. That more than fifty acres were intended to be covered and secured by the mortgage, and applied to the payment of the mortgage debt, in case a certain event should take place; and,

2. That the event, or the contingency to be provided for, has actually happened.

The question, then, is fairly presented : Is the deed (or mort-gage) so uncertain and obscure as to prevent the court from ar-riving at the clear intention of the parties, and carrying that in-tention into effect ? Let it be carefully examined. The first fifty acres mentioned in the mortgage, are described as lying on the south-east side of the farm, bounded on one side by a public road, on another side by lands of Benjamin Tuthill, deceased, and on the remaining two sides by other lands of the mortgagors. This is a sufficient description. It is a strip of fifty acres, on the south-east side of the farm ; and the farm is described with con-venient certainty as the farm late of James Crommelin, deceased, and also by its general boundaries. A line drawn parallel to the south-east boundary line of the farm, so as to include fifty acres of land within the deed, would describe with accuracy the land intended to be mortgaged. If this should prove incumbered so as to defeat the mortgage, then " the next and nearest adjoining there-to fifty acres of land of and belonging to the said farm or plantation now in the joint or separate possession of the aforesaid James, Alfred and Edward Crommelin," that is unincumbered, is to be taken. There can be no difficulty in ascertaining the next and nearest adjoining thereto fifty acres of land ; a single parallel line will give it with mathematical exactness. But according to the letter of the mortgage, it must be fifty acres unincumbered. Now if it turns out that the whole property was at that time, or is now incumbered, does the mortgage fail?—is the remedy gone entirely ? I think not. The whole of the property was incum-bered at the very time of making the mortgage. This was sure-ly known to the mortgagors ; and from the very provision now under consideration, it is plainly to be inferred that the com-plainant also knew it, or he would not have desired more than fifty acres of land as a security for the small sum of three hun-dred and seventy-one dollars and eleven cents. It cannot then be supposed, they intended fifty unincumbered acres, when in truth there were none such to be found.

If then the next fifty acres, although incumbered, may be taken, and they also should prove insufficient, are the rights of

the complainant at an end, or may he resort to fifty acres more? I think he may resort to the next fifty acres, and continue to do so until the mortgage money is raised.

I consider the true meaning of the parties to have been this; that the whole of the property should be subject to the mortgage, and might be taken to satisfy it, if necessary: that if it became expedient to resort to the land to raise the money, a strip of fifty acres on one side was to be resorted to in the first instance; if that should be so incumbered as to defeat the title, or prove insufficient to raise the money, then the next adjoining fifty acres were to be resorted to, and so on by separate and adjacent parcels of fifty acres until one was found not so incumbered as to defeat the title and claim of the mortgagee.

It appears to me this is fairly and plainly to be gathered from the mortgage itself, and that too without taking as great a latitude of construction as is admitted to be proper in the construction of deeds. If this be not the true construction, the whole clause must be taken as senseless, and rejected entirely.

" The rules laid down for the construction of deeds," says lord Mansfield, " are founded in law, reason and common sense: that they shall operate according to the intention of the parties, if by law they may: and if they cannot operate in one form, they shall operate in that which by law will effectuate the intention :" *Good title* v. *Bailey, Cowp.* 600. In that case an instrument was held to be a grant, although no words of conveyance were used, except the special form of words applicable to a release only; upon the ground that the intention of the parties was to pass all the right in the premises. And justice Aston, in the same case, says, It is clear from the general complexion and circumstances of this case, that there has been some dispute between the parties, and that this release was an agreement between them for the purpose of adjusting all matters in difference; and principally, on the ground of intention thus collected, he concurred with lord Mansfield. The same point is decided in 7 *Mass. R.* 384, *Pray* v. *Pierce.* In *Bache and al.* v. *Proctor, Doug.* 382, it was held by the same judge, and also by Buller, judge,

[Lee v. Woodworth et al.]

that a bond, with the condition that the obligor should render to the plaintiffs a true, just and perfect account in writing of all and every sum and sums of money, that he should receive for the relief and maintenance of the poor of the parish ; meant not only that an account should be rendered, but the money paid ; and a suit upon the bond, alleging the non-payment as a breach of the condition, was sustained, on the ground that it was clearly the intention of the parties, and the fair construction of the instrument.

A deed containing no words of grant in the premises, was held to pass the fee, on the ground that taking the whole deed together, it could not be doubted that the intention was to pass the fee. In that case, chief-justice Parsons said, the rule that when the intention of the parties can be discovered by the deed, the court will carry that intention into effect, if it can be done consistently with the rules of law, is founded in good sense, and ought always to govern us.

If, then, the intention of these parties was as I have stated it to be, it is the duty of the court, according to the authorities cited and many others that might be added, to carry the intention into effect, unless there be some rule of law to prevent it. I know of none that can apply to this case. The defendants stand in the place of the original mortgagors, claiming through them, and are bound by their acts.

The objection set up in the answer, that they are bona fide purchasers for a valuable consideration and without notice, and that therefore the property ought not to be charged in their hands, cannot avail them. The mortgage was duly registered, and was notice to all the world. If there was any ambiguity on the face of it, it was sufficient to put them upon inquiry. This is not like the case of a mistake of the amount in registering a mortgage. There the record is notice only of the amount that appears. When the amount is specified, it must be considered as truly set out in the registry, and there is nothing to induce further search.

It is the opinion of the court, therefore, and it is so decreed, that the complainant is entitled to a sale of the five undivided

[Lee v. Woodworth et al.]

fourteenth parts of the fifty acres specifically described in the mortgage ; and if that should prove insufficient to satisfy the mortgage and costs, that he be at liberty to make sale of five undivided fourteenth parts of the next adjoining fifty acres, and so continue until the debt and costs are fully satisfied.

Decree accordingly.